FILED by _ℓ𝓂_ D.C.

DEC 0 8 2014

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

### MIAMI DIVISION

Case No. _____ -Civ   **14-CV-24624-Altonaga/O'Sullivan**

| | |
|---|---|
| JOSE YEYILLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MIAMI-DADE COUNTY PUBLIC | ) |
| SCHOOLS; LISA ROBERTSON, in | ) |
| her individual capacity, and in her | ) |
| official capacity as Principal of | ) |
| John A. Ferguson Senior High | ) |
| School; ARMANDINA ACOSTA- | ) |
| LEON, in her individual capacity, | ) |
| and in her official capacity as | ) |
| Assistant Principal of John A. | ) |
| Ferguson Senior High School; | ) |
| ASUNCION VALDES, in her | ) |
| individual capacity, and in her | ) |
| official capacity as Payroll and | ) |
| Substitute Teacher locator of John A. | ) |
| Ferguson Senior High School; | ) |
| and EGNA RIVAS, in her individual | ) |
| capacity, and in her official capacity | ) |
| as Attendance Office Secretary of | ) |
| John A. Ferguson Senior High | ) |
| School | ) |
| | ) |
| Defendants | ) |
| _____ | ) |

1

## COMPLAINT

1.  Plaintiff brings this action *pro se* seeking to recover damages caused to the Plaintiff by Defendants' intentional and malicious discrimination, retaliation, and harassment in violation of the Fourteenth Amendment of the United States Constitution; 42 US.C. Sections 1983 and 1985(3) of the Civil Rights Act; Section 601 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d; Sections 703 and 704 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000-e2 and 2000-e3; the Age Discrimination in Employment Act of 1967, 29 U.S.C. Section 623; and Florida common law.

## JURISDICTION

2.  Jurisdiction is invoked pursuant to 28 U.S.C. Sections 1331, and 1343 (1), (3) and (4), and supplemental jurisdiction over Plaintiff's asserted state claims is invoked pursuant to 28 U.S.C. Section 1367.

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part the events or omissions giving rise to the claims occurred within the jurisdiction of this Court and/or maintains a permanent business office in this District.

## PARTIES

4.  Plaintiff, a fifty-year-old, foreign-born, non-native English-speaking

Hispanic man of Cuban descent, with a residence at 5505 SW 135TH Court, Miami, Florida 33175.   At all relevant times I was a Substitute Teacher in Miami-Dade County Public Schools who met the qualifications required by Florida Statutes 1012.32 and 1012.35; employed pursuant to F.S.1012.39 (1) (a); afforded "the same rights and protection of laws as certified teachers" under F.S. 1012.39(2); and defined as a "classroom teacher" by F.S. 1012.01(2)(a).

5.   The School Board of Miami-Dade Policy 6Gx13-4-1.07 IA refers to Substitute Teachers as "temporary instructors."  It defines a temporary instructor "<u>as a person properly qualified to serve as a substitute teacher who is assigned to instruct and supervise students in attendance whenever the absent teacher is absent from the work location for less than ten (10) consecutive work days, excluding weekends, holidays and teacher workdays</u>" (Emphasis added); and restates the same definition in Policy 3120- Employment of Instructional Staff.

6.   Policy 3120.04A states that "[t]he employment of temporary instructors shall comply with a planned program developed by the District" and authorizes

> Each school principal…to employ temporary instructors when an instructional staff member is unable to perform assigned duties.

The principal shall obtain temporary instructors from the approved
list published by the Human Resource Office.

In the absence of a regular teacher, a temporary instructors (sic)
shall be employed under the following conditions:

1.  Absence of regular teachers shall be filled by highly qualified
temporary instructors whenever possible.

2.  <u>All temporary instructors shall observe the same hours and perform
the same duties as regular teachers</u>.  (Emphasis added)  Substitutes
may be excused by the principal from instructional meetings.

3.  Each temporary instructor shall conduct classes according to lesson
plans and schedules prepared by the teacher who is absent.

4.  Temporary instructors shall be responsible for the extracurricular
duties assigned to the regular teacher.  Each temporary instructor
shall leave for the returning teacher a summary of the work covered
and work assigned to students.

5.  Compensation of temporary instructors shall be established by the
School Board.

6.  The Board authorizes the employment of State and District-
certificated temporary instructors pursuant to Florida law.

7.  The District may revoke a temporary instructor's certificate for cause.

7.  Defendant Miami-Dade County Public Schools (hereinafter "M-DCPS")

is a school district established under Section 4(a) Article IX of the Florida

Constitution, and F.S. 1001.30-33, and maintains an office at 1450 NE 2nd

Avenue, Miami, Florida 33132.  Throughout the time referenced in this

Complaint M-DCPS was a recipient of federal funds.

8.  Defendant Lisa R. Robertson, whose office is located at 15900 SW 56

Street, Miami, Florida 33185 was at all relevant times a full time employee of

M-DCPS, a recipient of federal funds, serving as the Principal of John A.

Ferguson Senior High School; in that capacity, acting under color of law, she

4

is responsible for supervising Ferguson's "personnel as the School Board

determines necessary" F.S.1012.28(1);" "responsible for the performance of

all personnel employed by the district school board and assigned to the school

to which the principal is assigned" F.S. 1012.28(2); "perform such duties as

may be assigned by the district school superintendent pursuant to the district

school board including but not limited to rules relating to administrative

responsibility" F.S.1012.28(5); delegated with the "[r]esponsibility for the

administration of any school…in accordance with rules established by the

district school board" F.S. 1012.31(4); "authorized to delegate responsibilities

to appropriate staff members" The School Board Policy 0100; and enforcing

"all School Board regulations and Florida Statutes that pertain to the office"

Ibid.  She is sued in her individual capacity, and in her official capacity.

9.  Defendant Armandina Acosta-Leon, whose office is located at 15900

SW 56 Street, Miami, Florida 33185, was at all relevant times a full time

employee of MDCPS, a recipient of federal funds, serving as Assistant

Principal of John A. Ferguson Senior High School; in that capacity, acting

under color of law she is responsible for assisting the Principal in the

supervision of John A. Ferguson Senior High School as the School Board

determines necessary; assisting the Principal with "the coordination and

5

administrative direction of the instructional and non-instructional activities"
F.S. 1201.01 (3)(c)(1) and (2) of John A. Ferguson Senior High School; and
assisting Mrs. Robertson to enforce and implement all School Board
regulations and Florida statutes that pertain to John A. Ferguson Senior High
School.  At all relevant times Assistant Principal Armandina Acosta-Leon
was responsible for the supervision of the clerical personnel at John A.
Ferguson Senior High School.  She is sued in her individual capacity, and in
her official capacity.

   10. Defendant Asuncion Valdes, whose office is located at 15900 SW 56
Street, Miami, Florida 33185, was at all relevant times a full time employee
of M-DCPS, serving as Data Input Specialist II, Payroll, and Substitute
Locator at John A. Ferguson Senior High School; in that capacity, acting
under color of law she is responsible for performing clerical tasks, locating
Substitute Teachers and assigning them to substitute regular teachers
according to the School Board of Miami-Dade County's Policies and Florida
statutes that pertain to John A. Ferguson Senior High School under the
supervision of Principal Lisa Robertson and Assistant Principal Armandina
Acosta-Leon.  She is sued in her individual capacity, and in her official
capacity.

6

11.  Defendant Egna Rivas whose office is located at 15900 SW 56 Street, Miami, Florida 33185, was at all relevant times a full time employee of M-DCPS, serving as Data Input Specialist II and Attendance Secretary at John A. Ferguson Senior High School; in that capacity, acting under color of law she is responsible for performing clerical duties and keeping attendance records of the students.

## FACTS

12. Since 2008 the administration of John A. Ferguson Senior High School has assigned, and required only foreign-born, forty-plus-year-year-old, non-native-English-speaking Hispanic Substitute Teachers, including Plaintiff, to perform unpaid clerical duties and diverse office tasks unrelated to our instructional duties defined by Florida Statutes and The School Board of Miami-Dade County Rules, during Planning Periods, Early Release Days, and every moment that they were not substituting a Teacher.

13.  Every moment that Plaintiff  was not substituting a Teacher included time when the teachers I was assigned to substitute left their classrooms late or returned to their classrooms early, and when the teachers whom I was assigned to substitute claimed that they had not asked to be substituted.

14.  Although I had occasionally worked at John A. Ferguson Senior

7

High School since 2004 or 2005, I had been exclusively substituting there almost every day since 2008.

15. Since 2008 previous Substitute Locator Mrs. Diane Castaneda, and subsequent Substitute Locator Mrs. Asuncion Valdes assigned unpaid clerical duties in the Attendance Office only to foreign-born, forty-plus-year-old, non-native-English-speaking Hispanic Substitute Teachers during Planning Periods, Early Release Days, and every moment that they were not substituting a Teacher.

16. Mrs. Castaneda and Mrs. Valdes often said that the clerical tasks were assigned to us by "la jefa" ("the boss").

17. On many separate occasions when she referred to "la jefa," Mrs. Valdes glanced, pointed with her head, and her hand sometimes towards Principal  Lisa Robertson's office, and sometimes towards Assistant Principal Armandina Acosta-Leon's office.

18. Mrs. Castaneda, Mrs. Valdes, Mrs. And Acosta-Leon personally supervised the Attendance Office to ascertain that foreign-born, forty-plus-year-old, non-native-English-speaking Substitute Teachers, including Plaintiff, were there working and readily available to substitute any Teacher including non-Hispanic and young Substitute Teachers who were never

8

required to perform clerical duties in the Attendance Office.

19. At all relevant times Assistant Principal Mrs. Armandina Acosta-Leon was responsible for supervising the clerical personnel at John A. Ferguson Senior High School.

20. Mrs. Armandina Acosta-Leon regularly walked through the former Attendance Office, and visited the Attendance Office to speak to the clerical personnel, including Attendance Office Secretary Egna Rivas who supervised the clerical duties and diverse office tasks that she ordered foreign-born, forty-plus-year-old, non-native English-speaking Hispanic Substitute Teachers to perform during Planning Periods, Early Release Days, and every moment that they were not substituting a Teacher.

21. While Assistant Principal Armandina Acosta-Leon walked through the former Attendance Office and visited the Attendance Office she observed the foreign-born, forty-plus-year-old, non-native-English-speaking Hispanic Substitute Teachers during Planning Periods, Early Release Days, and every moment that they were not substituting a Teacher performing clerical tasks such as filing referral copies and other documents in the students' folders that were kept in the vertical large metal cabinets placed against the wall in the back of the former Attendance Office, and other clerical duties and diverse

9

office tasks.

22.  Since 2010 Assistant Principal Armandina Acosta-Leon and

Substitute Locator Asuncion Valdes regularly went to the Attendance Office

while Plaintiff was performing clerical duties to ask him to cover for a

teacher or send me on errands around the school.

23.  On many occasions I heard Attendance Office Secretary Egna Rivas

talking on the phone to "Mindy" (Assistant Principal Armandina Acosta-

Leon), and "Mercy" (Substitute Locator Asuncion Valdes) asking them for

"more help in the office;" to send her Cubans only ("Mandáme cubanos

nada más"); that they must be Cubans ("Que sean cubanos"); to send her

"her Cubans" ("Mandáme mis cubanos"); to send her those Substitute

Teachers whom they had agreed upon ("Mandáme los que sabés"); to send

her "the old ones" ("Mandáme los viejitos"); and she often specifically

referred to the foreign-born, forty-plus-year-old, non-native-English-

speaking Hispanic Substitute Teachers she requested, including Plaintiff, by

name.

24.  From 2008 until June, 2011, I was almost daily assigned and

required to perform clerical duties in the Attendance Office by Dianne

Castaneda, Egna Rivas, and Egna Rivas' assistant, Guadalupe Diaz,

sometimes during entire days, and almost during entire days, when the

Teachers  Plaintiff was assigned to substitute turned out that they had not

asked to be substituted when Plaintiff arrived in their classrooms; when

Plaintiff found a Substitute Teacher—who invariably was a non-Hispanic

or young Substitute Teacher who was never assigned and required to perform

clerical duties in the Attendance Office—already present in the classroom to

cover for that Teacher; and when Substitute Locator Asuncion Valdes

claimed that there had been "a change" and she assigned Plaintiff to perform

clerical duties in the Attendance Office.

25.  In 2011 Plaintiff called (305) 995-1000 to complain about John A.

Ferguson Senior High School administration's policy of assigning and

requiring Substitute Teachers to perform clerical tasks and diverse office

tasks in the Attendance Office.  Plaintiff's call was transferred to Mr. Claude

Archer, Director of Instructional Staffing of Human Resources of Miami-

Dade County Public Schools.  Mr. Archer told me:  "The Principal can ask

you to do anything he wants.  If you don't want to do clerical work there go

to other schools."   Then Mr. Archer asked for, and Plaintiff told him, the

name of the school, the principal's name, Plaintiff's name, and Plaintiff's

employee number.

11

26.  After the Attendance Office was moved to a corner room adjacent to the former Attendance Office facing the school's patio on August, 2011 Assistant Principal Armandina Acosta-Leon supervised the foreign-born, forty-plus-year-old, non-native-English-speaking Hispanic Substitute Teachers every day when she walked past the new Attendance Office's windows.

27. Since November 2008 several foreign-born, several forty-plus-year-old, non-native-English-speaking Hispanic Substitute Teachers who had been assigned and required to perform clerical duties in the Attendance Office during Planning Period, Early Release Days, and every moment that they were not substituting a Teacher had discreetly and timorously commented to Plaintiff that they were not required to perform clerical duties in any other school where they had substituted.

28. Since 2008 Plaintiff had discreetly told the aforementioned Substitute Teachers that such had also been his experience at other schools; and openly, in the presence of Mrs. Rivas in the Attendance Office since November, 2013 that Substitute Teachers can not be required to perform clerical duties because Substitute Teachers are not clerical personnel, and that Substitute Teachers are responsible only for instructional duties.

29. Mrs. Genoveva Flores is a sixty-plus-year-old Hispanic Substitute Teacher. On February 12th, 2014, in the presence of Attendance Office Secretary Mrs. Egna Rivas and Plaintiff, Mrs. Genoveva Flores claimed that the clerical assignments that she is assigned and required to perform in the Attendance Office are "humiliating," that she "never sees the young ones here," and that "she [Mrs. Asuncion Valdes] chooses only us to do this, but not the young ones and her friends." Shortly thereafter Mrs. Flores and Plaintiff are assigned to cover temporarily for a teacher. When the teachers whom they were assigned to substitute returned, Mrs. Flores and Plaintiff returned to the Attendance Office to continue highlighting admission paper slips. Whereupon Mrs. Asuncion Valdes appeared pushing a cart bearing food which she kindly offered to them.

30. Mrs. Sonia Fernandez is a foreign-born, seventy-seven-year-old, non-native-English-speaking Hispanic Substitute Teacher of Cuban descent. On February 13th, 2014, in the presence of Attendance Office secretary Mrs. Egna Rivas, another forty-plus-year-old, non-native-English-speaking, Hispanic Substitute Teacher of Cuban descent whose name Plaintiff does not remember even though he had professionally known her since approximately 2010), and Plaintiff, Mrs. Fernandez stated that she had

never substituted in any other school which assigned and required her to perform clerical duties, and that "they do not require me to do this [clerical duties] in Braddock [High School]" where she was often called to substitute.

31. Mrs. Ana San Cesario is a foreign-born, fifty-two-year-old, non-native English-speaking Hispanic Substitute Teacher of Cuban descent. Discreetly and timorously she told Plaintiff in the Attendance Office on two separate occasions on January and early February 2014: "They have been making me do this [clerical duties] all day long."

32. Mrs. Carmen Martinez is a foreign-born, fifty-seven-year-old, non-Native-English-speaking, Hispanic Substitute Teacher of Cuban descent. Discreetly and timorously she often told Plaintiff that clerical duties were not assigned and required to be performed in any other school where she had substituted.   On January or early February of 2014 she discreetly, timorously, and visibly upset told Plaintiff: "They are making me  do this [clerical duties] all day-long," and, "They do not make me do this [clerical duties] in any other school.  I do not protest because this is my frijoles."

33. Mrs. A (hereinafter "Mrs. A"), referred by other Substitute Teachers as "la colombiana" ("the Colombian lady"), is a forty-plus-year-old Hispanic

14

Substitute Teacher. On April 25th, 2014, in the presence of Attendance

Office secretary Mrs. Egna Rivas, Mr. José Companioni, and Plaintiff,

Mrs. A acknowledged that she had never been assigned and required to

perform clerical duties in any other school where she had substituted.

34. Mr. José Companioni is a foreign-born, sixty-one-year-old, non-

native-English-speaking Hispanic Substitute Teacher of Cuban descent.

Mr. Companioni had often privately told Plaintiff that clerical duties were

not assigned and required to be performed in any other school where he

had substituted. On April 25th, in the presence of Attendance Office

Secretary Mrs. Egna Rivas, Mrs. A, and Plaintiff, Mr. Companioni

acknowledged that they had never been assigned and required to perform

clerical duties in any other school where they had substituted.

35. Mr. Arturo Casado is a foreign-born, sixty-four-year-old, non-native-

English-speaking Hispanic Substitute Teacher of Cuban descent. Mr.

Casado has often privately told Plaintiff that he had never been assigned

and required to perform clerical duties in any other school where he had

substituted. During Early Release Day in September or October 2013,

Mr. Casado, for no apparent reason, told Plaintiff in the Attendance Office

in the presence of Egna Rivas and Substitute Teacher Adela Medero:

15

"You can also get disability for running out of the classroom to go to the restroom."  On two separate occasions Mr. Casado told Plaintiff that disability benefits were easy to get, and "Well, you know about that." During May, 2014, Mr. Casado asked Plaintiff whether he had Medicaid. When Plaintiff answered that he did not have Medicaid, Mr. Casado claimed to be surprised because "I know lots of people like you who are getting Medicaid."

36. The clerical assignments and office tasks that only foreign-born, forty-plus-year-old, non-native-English-speaking, Hispanic Substitute Teachers, including Plaintiff, were required to perform in the Attendance Office since 2008 were

a.  filing Case Management forms (referrals) copies and other documents in the students' folders that were kept in large metal cabinets until June of 2011;

b.  arranging in alphabetical order and filing excuse notes signed by parents;

c.  filing referral copies, admission paper slips, and other documents;

d.  filling forms and letters in a computer and printing copies of them;

e.  searching in the computer in which classroom a student was located

16

when a parent or guardian arrived to remove the student from the school;

f.  printing letters to parents informing them of disciplinary proceedings and other subjects and putting them in envelopes;

g.  putting daily attendance reports in the teachers' mailboxes;

h.  lifting boxes, moving desks, opening and closing windows;

i.  finding and highlighting the names of students in an attendance log;

j.  searching for the names of the students' parents or guardians in emergency contact cards in a small metal cabinet in the counter;

k.  highlighting admission paper slips;

l.  distributing highlighted admission paper slips to the students in the Attendance Office in the morning and during students' lunch breaks, stamping them and signing them;

m. stamping and signing the small paper slips given to the parents or guardians when they collected the students from the school during class time  or before the exit bell; and

n.  errands to other offices and classrooms around the school.

37. These clerical assignments, in addition to being entirely unrelated to Substitute Teachers' instructional duties, were required to be done in plain view of students, visiting parents, student helpers, and school staff.

38. Throughout the last six years many students in the classrooms and others who have walked by the Attendance Office have stopped to ask Plaintiff why he was doing clerical work there which are assigned to student helpers and office secretaries. One of them asked Plaintiff whether working there was "CSI [punishment] for substitutes [Substitute Teachers]."

39. Student helpers under the supervision of the Attendance Office Secretary, Egna Rivas, and Guadalupe Diaz, and under their express orders, often assigned clerical work to the Substitute Teachers in front of other student helpers, visiting parents, students, and school staff.

40. As a result of Defendants' intentional and malicious discrimination against Plaintiff and other foreign-born, forty-plus-year-old, non-native-English-speaking Substitute Teachers Plaintiff had suffered emotional distress. Since September 2011 Plaintiff has been, and still is, receiving successful medical treatment for his emotional distress.

41. Having already previously witnessed how one teacher's medical condition had been divulged to such extent that even Substitute Teachers, Egnas Rivas, and Guadalupe Diaz knew about it, Plaintiff declined to disclose his medical condition to anybody at Ferguson.

42. When Asuncion Valdes, the Substitute Teacher Locator, called

18

Plaintiff in late August to ask him why he had not called her to substitute, Plaintiff told her that he had been taking care of his ill mother.

43.  September 16th, 2013 Room 1221.  Upon Plaintiff's return from the restroom, Plaintiff finds the Principal Lisa Robertson, standing outside the door of Room 1221. Exhibiting a stern expression, she admonished him: "You have to be on time."   There were exactly two (2) minutes left for the bell.  There were two teachers waiting to use the restroom when Plaintiff walked out of it.

44.  September or early October 2013, at or around 7:10 AM, Plaintiff was in the Main Office standing in front of Asuncion Valdes' office awaiting that day's assignment.  Summoned by the Principal Lisa Robertson to her office, Assistant Principal Armandina Acosta-Leon walked by past Plaintiff twice making the distinct sound of a car's horn.  Mrs. Asuncion Valdes looked at Plaintiff, smiling.  The secretaries of the Principal and Assistant Principal were present nearby at their desks.

45. On at least three occasions Asuncion Valdes inclined her head scarcely restraining a smile every time she asked Plaintiff, "How is your mother?"

46.  December 2013 through early January 2014:  For the last two years

one Substitute Teacher and two paraprofessionals had kindly offered

Plaintiff transportation in their cars after dismissal time at 2:20PM. Plaintiff

often waited for them in the parking lot.

47. During December, 2013 Plaintiff had noticed on two occasions the

attentive, but discreet, surveillance of one police officer standing by the

school's entrance. During early January, 2014 Plaintiff noticed for the

second consecutive occasion one school police officer standing beside

Assistant Principal Armandina Acosta-Leon just outside the main entrance

leaning forwards and gawking at Plaintiff with patent concern while

Plaintiff stood waiting nearby for one paraprofessional who had told him

to wait for her, in the company of other paraprofessionals. When the police

officer realized that Plaintiff had noticed him, the police officer quickly

straightened and hid beside Assistant Principal Armandina Acosta-Leon.

48. Since then Plaintiff respectfully and gratefully declined the gracious

offers from Mr. Casado and one of the two paraprofessionals to wait for

them in the parking lot. Until recently unfailingly polite, the other

paraprofessional, and the majority of the other paraprofessionals, suddenly

became noticeably evasive when they met Plaintiff. Thenceforth Plaintiff

avoided the parking lot except when he arrived on foot or on somebody's car,

and when he walked through it when he departed the school at 2:20 PM.

49.  Pep Rally Friday January 31st, 2014.  For the last six years Plaintiff, and a few regular teachers, have chosen to stand on a narrow corridor between the main gymnasium's doors and the gymnasium's floor during pep rallies.  During these events Principal Lisa Robertson, Assistant Principal Armandina Acosta-Leon, and other administrators walk around the gymnasium supervising the activities.  In addition, Assistant Principal Armandina Acosta-Leon takes pictures of the event with a camera.

50. This day Assistant Principal Armandina Acosta-Leon's duties included also leaving the gymnasium's floor to stand close to Plaintiff on two separate occasions; on the second occasion almost grazing Plaintiff's chest with her shoulder when she turned her back on him; whereupon she kept moving backwards standing closer to Plaintiff and forcing him to retreat because he was afraid that she was intentionally going to make contact with him, until Plaintiff hit one of the gymnasium's doors with the heels of his shoes and had to move aside.  Despite the fact that the corridor was empty, Assistant Principal Armandina Acosta-Leon kept standing within less than two feet away from Plaintiff during approximately fifteen minutes engaged in a prolonged conversation with a young woman.

21

51. Standing nearby within the gymnasium, Principal Lisa Robertson glanced at Plaintiff and Assistant Principal Armandina Acosta-Leon many times, and was well-aware of what Assistant Principal Armandina Acosta-Leon was doing.

52. At all times during the duration of the Pep Rally, and ever after, Plaintiff avoided making eye-contact with Assistant Principal Armandina Acosta-Leon because Plaintiff was afraid that, given what had occurred at the Pep Rally, she could somehow mistake a glance or gesture for a hostile act.

53. On Monday February 3rd, 2014 the day after the Pep Rally, or Thursday, February 6th, Assistant Principal Armandina Acosta-Leon and Substitute Locator Asuncion Valdes went to the Attendance Office during fifth period where Plaintiff was performing clerical duties; in Mrs. Acosta-Leon's presence, Mrs. Valdes gave Plaintiff a document and ordered him to take it to a classroom in Building 10.

54. Wednesday, February 12th, 2014.  Mrs. Genoveva Flores incident (Item 28 of this Complaint).

55. Thursday, February 13th, 2014 was Early Release day.  Since 2008 only foreign-born, forty-plus-year-old, non-native-English-speaking Hispanic

Substitute Teachers, including Plaintiff, have been assigned and required to perform clerical duties in the Attendance Office.  This Early Release Day was remarkable because just three Substitute Teachers, Mrs. Sonia Fernandez (Item 29 of this Complaint); another foreign-born, forty-plus-year-old, non-native-English-speaking Hispanic lady; and Plaintiff, were present in the Attendance Office performing clerical duties.

56. Tuesday February 18th, 2014, at or around 7:00 AM Plaintiff gave a signed letter in an envelope sealed with tape and addressed "To Dr. Lisa Robertson" to Secretary Liza Liza Doskow in the Main Office to deliver to Principal Lisa Robertson inquiring "whether it is John A. Ferguson Senior High School's policy to require a determinate group of Temporary Instructors, including myself, to perform clerical duties and diverse other office tasks in the Attendance Office during Planning Periods and Early Release Days beyond the scope of our instructional duties."

57. At or around 8:30 AM:  Arturo Casado, a Substitute Teacher, arrived in Room 230 where Plaintiff was substituting a Teacher to tell him that Mrs. Asuncion Valdes, Payroll and Substitute Teacher Locator, wanted to talk to him.

58. At or around 8:35 AM:   Plaintiff arrives in the Main Office.  Holding

23

the letter in her hand that Plaintiff had given to the Secretary to deliver to

the Principal Lisa Robertson, Mrs. Valdes tells Plaintiff to follow her to

"where they cannot hear us."  Plaintiff follows her outside the Main Office.

Visibly upset, Mrs. Valdes informs Plaintiff that the Principal gave her his

letter.  Mrs. Valdes says that she does not understand why Plaintiff was

complaining.  Plaintiff tells Mrs. Valdes that the letter was meant for the

Principal. Mrs. Valdes replied:  "She asks me to do tasks that I do not have

to do and I have to do them.  I tell you to work in the office to pay you full

day, and you do this?   Why now?  I am not going to call you again for Early

Release."  Plaintiff tells her that he just wanted to know the Principal's

answer because he was aware that clerical duties and office tasks are not

required of Substitute Teachers in any school.  Mrs. Valdes replied:  "The

Principal said that if you do not like it you should start looking for other

schools."   Plaintiff asked her whether the Principal had really said that.

Mrs. Valdes answered, "Yes."  Plaintiff asked Mrs. Valdes whether the

Principal could tell him everything that she had just told me in writing.

Mrs. Valdes answered: "The principal is not going to do that."  Whereupon

Mrs. Valdes told him to return the following day to substitute the same

teacher again, and left.  Whereupon Plaintiff returned to Room 230.

59. At or around 12:45 PM:  Plaintiff was scheduled to substitute for another Teacher during 8th Period, but the teacher is present in the classroom and tells Plaintiff that she did not need a substitute.

60. Since 2008 Substitute Locators Dianne Castaneda and Asuncion Valdes have told Plaintiff that Substitute Teachers must report to them every time that they are not substituting a Teacher, and that if they do not assign them to substitute another Teacher that they must report to the Attendance Office to perform clerical duties.

61. At or around 12:46 PM:  Plaintiff arrived in the Main Office to report to Asuncion Valdes that the teacher is in the classroom.  Mrs. Valdes did not assign Plaintiff to substitute another Teacher.  Whereupon Plaintiff went to the Attendance Office, sat by a table, and started highlighting admission paper slips.  As soon as they see Plaintiff Attendance Office Secretary Egna Rivas, and Guadalupe Diaz, started smiling and exchanging glances.  Mrs. Rivas told Mrs. Diaz:  "Traté de ayudarlo pero él mismo se echó tierra." ("I tried to help him but he buried himself.")  Another Substitute Teacher, Carmen Martinez, arrived and started highlighting admission paper slips.  Mrs. Martinez asked permission from Mrs. Valdes to leave early, and left at 2:00 PM.

25

62. During the last minutes of the previous Early Release Day, Mrs. Rivas had suddenly offered her views about Noah's Ark. There were present just three Substitute Teachers, including Plaintiff, and Sonia Fernandez who commented that she did not have to perform clerical duties at Braddock Senior High School. But Mrs. Rivas seemed to be addressing Plaintiff in particular, perhaps because Plaintiff listened politely. Mrs. Rivas contended that "one should not believe what other people say."

63. Tuesday February 18th, 2014. At or around 2:00 PM Mrs. Rivas Started a prolonged soliloquy about her family. Then, as soon as Assistant Principal Armandina Acosta-Leon appeared in the adjacent office, Mrs. Rivas told Plaintiff, in a declamatory tone of voice, "It is difficult to raise children nowadays," and asked Plaintiff whether he and "your wife" had "sons or daughters." This inquiry Plaintiff found as bizarre as Mrs. Diaz's inquiry a few days before when she asked Plaintiff: "Does your wife work at John A. Ferguson Senior High School."

64. During the six years that Plaintiff had been assigned and required to perform clerical duties in the Attendance Office Mrs. Rivas and Mrs. Diaz had never addressed him except to assign him clerical tasks or send him on errands throughout the school. Plaintiff had never addressed them except in

26

a formal and polite manner, and never expressly or tacitly encouraged them, or anyone else, to inquire about his family, or his business.  Plaintiff found remarkably odd that Mrs. Rivas, who had never asked him personal questions, chose to do so right at the precise instant that Assistant Principal Armandina Acosta-Leon arrived in the adjacent office and started speaking to a Secretary.

65. Since one of Plaintiff's relatives works in one of Miami-Dade County Public Schools, this line of questioning was not only ostensibly impertinent but, in Plaintiff's consideration, it also conveyed a veiled threat, namely, that Plaintiff's written complaint to the Principal less than six hours ago would bring personal consequences not only to Plaintiff, but also to his family relative.

66. Mrs. Diaz brought a heap of stamped admission paper slips that she and Mrs. Rivas usually gave to Plaintiff to put in order, sat by the table where Plaintiff was sitting, hesitated giving them to him, glanced at Mrs. Rivas, stood up, and returned to her table with them.  Usually Mrs. Rivas and Mrs. Diaz asked Plaintiff to close the windows, and open them when the Teacher he is substituting has a Planning Period in the morning, but not today.

67. Assistant Principal Armandina Acosta-Leon is still in the adjacent office talking to the Secretary when Plaintiff departs at 2:20 PM. During the last six years Plaintiff had never seen Armandina Acosta-Leon in the Attendance Office at dismissal time (2:20 PM).

68. Wednesday February 19th, 2014, 7th Period, 2014, 12:51: The teacher across the hallway from Room 230 and Plaintiff are standing by their doors to encourage laggard students to get into the classrooms. Whereupon Principal Lisa Robertson walked by and waved at Plaintiff to get inside the classroom neglecting to give the same command to the other teacher even though she is visibly aware of her presence.

69. Plaintiff is not called to substitute Thursday 20th and Friday 21st. Not been called to substitute on Fridays was a rare occurrence.

70. Monday February 24th, 2014. At or around 7:00 AM. Asuncion Valdes gave Plaintiff that day's assignment: to substitute two teachers, one Teacher during the first three blocks, and the other Teacher during the last block. On top of the attendance rolls for both classes Mrs. Valdes clipped a copy of the first Teacher's actual communication to her regarding the reason for her absence and the class plan, and gives it to Plaintiff. In that copy the teacher informed Mrs. Valdes that the reason for her absence was that she

was "taking a mental health day off Monday."

71.  Monday February 24th, 2014. Last Block starts at 12:50 PM.  Plaintiff arrived at 12:43 PM outside classroom 257.   Classroom 257 is locked.  At or around 12:46 PM Plaintiff went downstairs and told a security monitor sitting by the school's entrance that he needed someone to open the classroom.  She claimed that she did not have a radio.  At or around 12:47 PM Plaintiff asked a student who had previously volunteered to find a security if she could go to find a security monitor on the first floor to inform him/her that we needed the classroom open.  The student returned and told Plaintiff that she found a security already aware of Plaintiff's request to open the classroom.  A teacher across the hallway kindly volunteers to call the office at or around 12:48 PM. At or around 1:05 PM another student volunteered to go, and went to the Main Office to get someone to open the classroom.  At 1:13 PM (23 minutes later) a security monitor finally arrived to unlock the door.  Although finding locked classrooms is not unusual for Substitute Teachers at John A. Ferguson Senior High School, in twenty years Plaintiff has never been made to wait more than five minutes to have a classroom unlocked at John A. Ferguson Senior High School or any other Miami-Dade County public school.

72.  Thursday February 27th, 2014.  At or around 7:00 AM  Asuncion

Valdes gave Plaintiff that day's assignment and he left on top of her desk the copy of the communication that the teacher had sent to her the previous Monday.  During a Planning Period Arturo Casado and Plaintiff were performing clerical duties in the Attendance Office when an employee arrived there and told them to cover temporarily for two teachers on the second floor.  After lunch Plaintiff returned to classroom 119A.  Staring at Plaintiff with the same wary expression she had stared at Plaintiff during the last Pep Rally, Assistant Principal Armandina Acosta-Leon briskly walked through the middle of the hallway of Building 1 from its opposite end and towards Plaintiff and stood in the middle of the hallway forcing Plaintiff to walk past her close to the wall.  Given her bizarre behavior during the last Pep Rally past Plaintiff avoided making eye-contact with her afraid that she could mistake a glance or gesture for a hostile act.

73. Friday February 28th, 2014.  Asuncion Valdes gave Plaintiff that day's assignment smiling, shrugging, and looking in the direction of Assistant Principal Armandina Acosta-Leon's office.

74. The students under Plaintiff's supervision and Plaintiff were made to wait sixteen minutes until classroom 307 was unlocked.

75. Monday March 10th, 2014.  Plaintiff substituted a teacher in Room

1041.  Plaintiff was required to spend the Planning Period in the Attendance Office not only highlighting admission paper slips, but going on three errands to three classrooms throughout the school.

76. Tuesday March 18th, 2014 Plaintiff was assigned and required to stamp documents during Planning Period.

77. Wednesday March 19, 2014.  On 2011 Plaintiff called (305) 995-1000 to complain about John A. Ferguson Senior High School administration's policy of requiring a determinate group of  Substitute Teachers to perform clerical duties and diverse office tasks in the Attendance Office.  Plaintiff's call was transferred to Franklin Castellon, Instructional Staffing Officer of Human Resources of Miami-Dade County Public.  Mr. Castellon stated:  "They can tell you to do anything they want. You should be happy about that [performing clerical duties] because they keep calling you."

78.  Monday April 7th, 2014.  EEOC received my Questionnaire.

79. Plaintiff did not have a Planning Period from April 4th until April 25th, 2014.  Except for April 7th, 2014 when Plaintiff saw Substitute Teacher Ana San Cesario performing clerical duties in the Attendance Office at or around 12:25 PM, Plaintiff did not see any Substitute Teacher in the

31

Attendance Office until April 25th, 2014.

80. Friday April 25th, 2014.  Plaintiff substituted a physical education Teacher who had a planning period in the last block.  I was followed by Assistant Principal Ideal Garcia to the Attendance Office from Building 10. Another Administrator, who never visited the Attendance Office, for no apparent reason twice walked inside it and twice left it after spending about ten minutes conspicuously glancing at Plaintiff.  This visit was so unusual that the other two Substitute Teachers, Mrs. A and Mr. Companioni present in the Attendance Office performing clerical duties noticed it, made discreet facial gestures and whispers to each other and Plaintiff alerting each other and Plaintiff about his presence, and both hastily heaped admission paper slips on Plaintiff's side of the table counseling Plaintiff in an undertone to start working; Mr. Companioni advising Plaintiff: "Que te vea trabajando." ("Make sure he sees you working").  Shortly after the Administrator left, it just so happened that Principal Lisa Robertson conspicuously stood just outside the window facing the Attendance Office, glancing now and then inside the Attendance Office and at Plaintiff, while she was engaged in a prolonged conversation with somebody for about fifteen minutes.  Upon noticing Principal Lisa Robertson's presence, Mrs. A and Mr. Companioni

made discreet facial gestures at each other and at Plaintiff and slid more

admission paper slips towards Plaintiff's side of the table so that the

Principal saw Plaintiff working.

81. In addition to highlighting admission paper slips, and despite the

presence of two student helpers, Mrs. Egna Rivas and Mrs. Guadalupe Diaz

sent me on four errands around the school bringing notes to the teachers that

the parents of the students located in their classrooms were waiting for them

in the Attendance Office.

82. That same day in the afternoon Plaintiff received EEOC's letter from

Senior Investigator, Adrienne Baron, dated April 21, 2014, that "[t]he

information you have provided does not constitute a charge of discrimination

with this Office."

83. Monday April 28th, 2014.  Plaintiff filed a complaint against Principal

Lisa Robertson and Assistant Principal Armandina Acosta-Leon with the

Florida Department of Education which was referred by the Director of

Investigations, Michelle Southall, to the Superintendent of Miami-Dade

County Public Schools, Alberto Carvalho on Tuesday April 29th, 2014.

84. Wednesday April 30th, 2014.  The teacher Plaintiff was substituting

in 307 returned to the classroom at or around 1:50 PM.  Despite Mrs. Diaz's

undertone warning to Egna Rivas about what "Mindy said," Mrs. Rivas

snidely asked Plaintiff whether Plaintiff walked to work by necessity or by

choice, and whether Plaintiff knew how to drive a car; but neither she nor

Mrs. Diaz assigned him that day the usual clerical duties, office tasks, and

errands.

85.  May 22nd, 2014   First period is planning.  Plaintiff had not had a

Planning Period since April 30th.  Plaintiff had not seen any Substitute

Teacher in the Attendance Office since April 30th, therefore Plaintiff

assumed that the Superintendent Alberto Carvalho had finally exercised his

duty to enforce the School Board of Miami-Dade's policies (F.S.1001.51)

and persuaded Principal Lisa Robertson and Assistant Principal Armandina

Acosta-Leon to comply with them.

86. At or around 6:50 AM.  Smilingly, Asuncion Valdes gives Plaintiff

the Attendance rolls which were originally assigned to Substitute Teacher

Ronald Green.  Mr. Green's name was scratched and Plaintiff's name

added on top.  First period is Planning.

87. Plaintiff went to the Attendance Office.  There is only one employee

there, a Substitute Teacher, Adela Medero.  Mrs. Medero was processing

admission paper slips.  Plaintiff distributed blank admission paper slips to

34

the students arriving and standing in line.  When the students finished filling their information in the admission paper slips they returned them to Plaintiff with their parents' excuse notes and Plaintiff placed them together on the counter near Mrs. Medero.  Mrs. Diaz arrived shortly after 7:00 AM.  Right after Mrs. Medero had a brief and private conference with Mrs. Diaz, Ms. Medero turned to Plaintiff and sternly asked him: "Por qué no usas el stapler?  Es muy intellectual para tí?"—"Why don't you use the stapler (to staple together the receipts of the admission paper slips and the parents' excuse notes) Is it too intellectual for you?"

88.  At or around 7:20 Substitute Teacher Carmen Martinez arrived in the Attendance Office.  At or around 7:25 Guadalupe Diaz sent Plaintiff on two errands to ask two teachers whether they were going to move to other classrooms for testing.  Mrs. Diaz left at or around 7:25 AM because she was assigned to one of the classes doing testing.   At or around 7:30 Egna Rivas sent Plaintiff on an errand to one of the same teachers to confirm whether she had to move to another classroom, and assigned Mrs. Martinez to put a pile of documents in  order.

89.  At or around 7:35 AM Mrs. Egna Rivas was about to assign Plaintiff to put a pile of papers in order when a young woman approached Mrs. Rivas

35

and, pointing at her phone on the table, told her: "Mrs. Acosta-Leon wants to speak to you." Mrs. Rivas picked the phone and argued with Assistant Principal Armandina Acosta-Leon that she was alone in the office and needed help despite the fact that there were at least two student helpers present.

90. Visibly upset and serious, Egna Rivas assigned Mrs. Martinez the pile that she was going to assign to Plaintiff, and departed the Attendance Office. Either concerned that Plaintiff would not be seen working by Egna Rivas or in order to lighten the burden of work that Mrs. Rivas had assigned and required her to perform Mrs. Martinez took about one half of the documents that she was filing and placed them on the table in front of Plaintiff. A student helper put a basket full of documents on top of a stool and told Mrs. Martinez: "Do this." Mrs. Martinez complied.

91. Egna Rivas returned about ten minutes later, but did not assign Plaintiff any clerical task for the rest of the Planning Period.

92. Asuncion Valdes opened the Attendance Office and checked on Carmen Martinez and Plaintiff, and said, smiling: "José, you are here?"

## COUNT I-VIOLATION OF THE
## CIVIL RIGHTS ACT 42 U.S.C Section 1983
## THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH
## AMENDMENT OF THE UNITED STATES CONSTITUTION

93. Plaintiff repeats and re-alleges each and every allegation set forth above

as if fully set forth herein.

94. 42 U.S.C. Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity or other proper
> proceeding for redress…

95. Section 1 of the Fourteenth Amendment of the United States

Constitution states in pertinent part:  "No state shall…deny to any person

within its jurisdiction the equal protection of the laws."

96. All Defendants are "persons" within the meaning of Section 1983 in

that at all times material hereto they were acting under color of state law as

a political subdivision of the State of Florida, or a representative thereof.

97. Defendants' custom and usage of assigning and requiring only foreign-

born, forty-plus-year-old, non-native English-speaking Hispanic Substitute

Teachers, including Plaintiff, to perform clerical duties in the Attendance

37

Office during Planning Days, Early Release Days, and every time they were

not substituting a Teacher deprived Plaintiff of his equal protection right

protected by the Fourteenth Amendment of the United States Constitution

because of his national origin.

98. Defendants' conduct in assigning and requiring Plaintiff to perform

the unpaid clerical duties in Item 36, under the conditions of Items 37, 38,

and 39 of this Complaint unrelated to his instructional duties was intentional,

malicious, and extreme.

99. As a result of his deprivation of his equal protection right Plaintiff

incurred economic loss and suffered emotional distress.

100. Therefore Plaintiff respectfully requests that this court award

compensatory and punitive damages, equitable remedies, restitution, and

all other necessary, just, and appropriate relief to redress the injuries incurred

by Plaintiff as a result of the Defendants' violation.


### COUNT II-VIOLATION OF THE
### CIVIL RIGHTS ACT 42 U.S.C Section 1983
### THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH
### AMENDMENT OF THE UNITED STATES CONSTITUTION

101. Plaintiff repeats and re-alleges each and every allegation set forth above

as if fully set forth herein.

102. 42 U.S.C. Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity or other proper
> proceeding for redress...

103. Section 1 of the Fourteenth Amendment of the United States

Constitution states in pertinent part:  "No state shall...deny to any person

within its jurisdiction the equal protection of the laws."

104. All Defendants are "persons" within the meaning of Section 1983 in

that at all times material hereto they were acting under color of state law as

a political subdivision of the State of Florida, or a representative thereof.

105.  Defendants intentionally and maliciously retaliated against Plaintiff

because of his national origin

106.  Defendants retaliated against Plaintiff after he complained to

Principal Lisa Robertson about John A. Ferguson's policy of requiring that

a "determinate group of Temporary Instructors," including himself, perform

clerical duties and diverse office tasks in the Attendance Office during

Planning Periods and Early Release Days; thereupon she instructed Asuncion

Valdes within minutes of receiving my letter to tell me that if I did not like

39

performing clerical duties in the Attendance Office that I should "start looking for other schools."

107. Lisa Robertson and Armandina Acosta-Leon personally, and through employees under their supervision, and others, harassed Plaintiff by subjecting Plaintiff to offensive surveillance and scrutiny before, and after, February 18th, 2014 because he had voiced his opinion in the Attendance Office to other foreign-born, forty-plus-year-old, non-native-English-speaking Hispanic Substitute Teachers that Substitute Teachers were instructional personnel and thus should not be assigned and required to perform the clerical duties that John A. Ferguson Senior High School was assigning and requiring them to perform under their terms of employment.

108. Defendants intentionally created a hostile work environment for Plaintiff beginning on February 18th, 2014.

109. Attendance Secretary Egna Rivas unprecedentedly and maliciously asked me, in a loud tone of voice, about my wife; whether we had children; and assured me "that it was difficult to raise children nowadays," in the presence of Assistant Principal Armandina Acosta-Leon, her supervisor, the same day about six hours after receiving Principal Lisa Robertson's message through Substitute Locator Asuncion Valdes: "If you don't like it [performing

clerical duties and diverse office tasks in the Attendance Office] you should start looking for other schools."

110.  Defendants maliciously retaliated against Plaintiff locking him out of a classroom along with the students under Plaintiff's supervision during twenty-three minutes two days after he delivered his letter of complaint to Principal Lisa Robertson; and during sixteen minutes four days afterwards in another classroom.

111.  On April 25th, 2014 Principal Lisa Robertson and employees under her supervision harassed Plaintiff through conspicuous surveillance after he sent a complaint to the Equal Employment Opportunity Commission.

112.  After Plaintiff sent a complaint to the Office of the Inspector General of the Florida Department of Education, Egna Rivas asked Plaintiff in the Attendance Office whether he chose to go to school on foot by necessity or by choice and whether he knew how to drive a car; and Adela Medero questioned Plaintiff about his intellectual ability to staple two papers together.

113.  Defendants' conduct in their retaliation and harassment against Plaintiff was intentional, malicious, extreme, and outrageous.

114.  As a result of his deprivation of his equal protection right Plaintiff

41

incurred economic loss and suffered emotional distress.

115.  Therefore Plaintiff respectfully requests that this court award compensatory and punitive damages, equitable remedies, restitution, and all other necessary, just, and appropriate relief to redress the injuries incurred by Plaintiff as a result of the Defendants' violation.

## COUNT III-VIOLATION OF THE
## CIVIL RIGHTS ACT 42 U.S.C Section 1983
## THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH
## AMENDMENT OF THE UNITED STATES CONSTITUTION

116. Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

117. 42 U.S.C. Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress...

118. Section 1 of the Fourteenth Amendment of the United States Constitution states in pertinent part: "No state shall...deny to any person within its jurisdiction the equal protection of the laws."

119. All Defendants are "persons" within the meaning of Section 1983 in

42

that at all times material hereto they were acting under color of state law as
a political subdivision of the State of Florida, or a representative thereof.

120. Defendants' custom and usage of assigning and requiring only
foreign-born, forty-plus-year-old, non-native English-speaking Hispanic
Substitute Teachers, including Plaintiff, to perform clerical duties in the
Attendance Office during Planning Days, Early Release Days, and every
time they were not substituting a Teacher deprived Plaintiff of his equal
protection right protected by the Fourteenth Amendment of the United States
Constitution because of his age.

121. Defendants' conduct in assigning and requiring Plaintiff to perform
the unpaid clerical duties in Item 36, under the conditions of Items 37, 38, and
39 of this Complaint unrelated to his instructional duties was intentional,
malicious, and extreme.

122.  As a result of his deprivation of his equal protection right Plaintiff
incurred economic loss and suffered emotional distress.

123. Therefore Plaintiff respectfully requests that this court award
compensatory and punitive damages, equitable remedies, restitution, and all
other necessary, just, and appropriate relief to redress the injuries incurred by
Plaintiff as a result of the Defendants' violation.

43

## COUNT IV-VIOLATION OF THE
## CIVIL RIGHTS ACT 42 U.S.C. Section 1983
## CONSPIRACY TO DEPRIVE PLAINTIFF OF HIS EQUAL
## PROTECTION RIGHT BECAUSE OF HIS NATIONAL ORIGIN IN
## VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE
## FOURTEENTH AMENDMENT OF THE UNITED STATES
## CONSTITUTION

*José Yeyille v. Armandina Acosta-Leon, Asuncion Valdes, and Egna Rivas in
their individual capacities, and in their official capacities*

124.  Plaintiff repeats and re-alleges each and every allegation set forth

above as if fully set forth herein.

125.  42 U.S.C. Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity or other proper
> proceeding for redress…

126.  Section 1 of the Fourteenth Amendment of the United States

Constitution states in pertinent part:  "No state shall…deny to any person

within its jurisdiction the equal protection of the laws."

127.  All Defendants are "persons" within the meaning of Section 1983 in

that at all times material hereto they were acting under color of state law as a

political subdivision of the State of Florida, or a representative thereof.

44

128.  Defendants Armandina Acosta-Leon, Asuncion Valdes, and Egna Rivas under color of law conspired to deprive Plaintiff of his equal protection right protected by the Fourteenth Amendment of the United States Constitution because of his national origin.

129.  Defendants expressly communicated and confirmed their agreement to conspire to deprive Plaintiff of his equal protection right through telephone conversations; and tacitly, when Assistant Principal Armandina Acosta-Leon visited the former Attendance Office, walked through the former Attendance Office, and walked by the Attendance Office's window to supervise Plaintiff and other foreign-born, forty-plus-year-old, non-native English-speaking, Hispanic Substitute Teachers performing unpaid clerical duties there; and when Asuncion Valdes went to the Attendance Office to investigate and confirm Egna Rivas' complaints about foreign-born, forty-plus-year-old, non-native English-speaking Hispanic Substitute Teacher whom Asuncion Valdes had sent to the Attendance Office to perform clerical duties who "has not come to work" ("no ha venido a trabajar").

130.  In furtherance of their conspiracy Defendants intentionally and maliciously assigned and required only foreign-born, forty-plus-year-old, non-native English-speaking, Hispanic Substitute Teachers, including

45

Plaintiff, to perform unpaid clerical duties in the Attendance Office during Planning Days, Early Release Days, and every moment that they were not substituting a regular Teacher.

131.  As a result of his deprivation of his equal protection right Plaintiff incurred economic loss and suffered emotional distress.

132. Therefore Plaintiff respectfully requests that this court award compensatory and punitive damages, equitable remedies, restitution, and all other necessary, just, and appropriate relief to redress the injuries incurred by Plaintiff as a result of the Defendants' violation.

## COUNT V-VIOLATION OF THE CIVIL RIGHTS ACT 42 U.S.C. Section 1983 CONSPIRACY TO DEPRIVE PLAINTIFF OF HIS EQUAL PROTECTION RIGHT BECAUSE OF HIS AGE IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

*José Yeyille v. Armandina Acosta-Leon, Asuncion Valdes, and Egna Rivas in their individual capacities, and in their official capacities*

133.  Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

134.  42 U.S.C. Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or territory or the District of Columbia, subjects, or causes to be subjected, any

46

citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress…

135.  Section 1 of the Fourteenth Amendment of the United States Constitution states in pertinent part:  "No state shall…deny to any person within its jurisdiction the equal protection of the laws."

136.  All Defendants are "persons" within the meaning of Section 1983 in that at all times material hereto they were acting under color of state law as a political subdivision of the State of Florida, or a representative thereof.

137.  Defendants Armandina Acosta-Leon, Asuncion Valdes, and Egna Rivas under color of law conspired to deprive Plaintiff of his equal protection right protected by the Fourteenth Amendment of the United States Constitution because of his age.

138.  Defendants expressly communicated and confirmed their agreement to conspire to deprive Plaintiff of his equal protection right through telephone conversations; and tacitly, when Assistant Principal Armandina Acosta-Leon visited the former Attendance Office, walked through the former Attendance Office, and walked by the Attendance Office's window to supervise Plaintiff and other foreign-born, forty-plus-year-old, non-native English-speaking,

47

Hispanic Substitute Teachers performing unpaid clerical duties there; and when Asuncion Valdes went to the Attendance Office to investigate and confirm Egna Rivas' complaints about foreign-born, forty-plus-year-old, non-native English-speaking Hispanic Substitute Teacher whom Asuncion Valdes had sent to the Attendance Office to perform clerical duties who "has not come to work" ("no ha venido a trabajar").

139.  In furtherance of their conspiracy Defendants intentionally and maliciously agreed to assign, and require only foreign-born, forty-plus-year-old, non-native English-speaking Hispanic Substitute Teachers, including Plaintiff, to perform unpaid clerical duties in the Attendance Office during Planning Days, Early Release Days, and every moment that they were not substituting a regular Teacher.

140.  As a result of his deprivation of his equal protection right Plaintiff incurred economic loss and suffered emotional distress.

141. Therefore Plaintiff respectfully requests that this court award compensatory and punitive damages, equitable remedies, restitution, and all other necessary, just, and appropriate relief to redress the injuries incurred by Plaintiff as a result of the Defendants' violation.

## COUNT VI-VIOLATION OF THE
## CIVIL RIGHTS ACT 42 U.S.C. Section 1983
## CONSPIRACY TO DEPRIVE PLAINTIFF OF HIS EQUAL
## PROTECTION RIGHT BECAUSE OF HIS NATIONAL ORIGIN IN
## VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE
## FOURTEENTH AMENDMENT OF THE UNITED STATES
## CONSTITUTION

*José Yeyille v. Lisa Robertson, Armandina Acosta-Leon, and Asuncion Valdes
in their individual capacities, and in their official capacities*

142. Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

143. 42 U.S.C. Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress…

144. Section 1 of the Fourteenth Amendment of the United States Constitution states in pertinent part: "No state shall…deny to any person within its jurisdiction the equal protection of the laws."

145. All Defendants are "persons" within the meaning of Section 1983 in that at all times material hereto they were acting under color of state law as a political subdivision of the State of Florida, or a representative thereof.

49

146.  Defendants Lisa Robertson, Armandina Acosta-Leon, and Asuncion Valdes under color of law conspired to deprive Plaintiff of his equal protection right protected by the Fourteenth Amendment of the United States Constitution because of his national origin.

147. Defendants Assistant Principal Armandina Acosta-Leon and Asuncion Valdes expressly communicated and confirmed their agreement to conspire to deprive Plaintiff of his equal protection right through telephone conversations with Egna Rivas; and tacitly, when Assistant Principal Armandina Acosta-Leon visited the former Attendance Office, walked through the former Attendance Office, and walked by the Attendance Office's window to supervise Plaintiff and other foreign-born, forty-plus-year-old, non-native English-speaking, Hispanic Substitute Teachers performing unpaid clerical duties there; when Asuncion Valdes went to the Attendance Office to investigate and confirm Egna Rivas' complaints about foreign-born, forty-plus-year-old, non-native English-speaking Hispanic Substitute Teacher whom Asuncion Valdes had sent to the Attendance Office to perform clerical duties who "has not come to work" ("no ha venido a trabajar"); and Principal Lisa Roberson explicitly confirmed her previous agreement with Assistant Principal Armandina Acosta-Leon and Substitute Teacher Locator Asuncion

Valdes to conspire to deprive Plaintiff of his equal protection right by deliberately and conspicuously standing outside the Attendance Office's window on April 25th, 2014 personally to supervise the performance of the clerical duties that they had assigned and required Plaintiff to perform.

148.  In furtherance of their conspiracy Defendants intentionally and maliciously agreed to assign, and require only foreign-born, forty-plus-year-old, non-native English-speaking Hispanic Substitute Teachers, including Plaintiff, to perform unpaid clerical duties in the Attendance Office during Planning Days, Early Release Days, and every moment that they were not substituting a regular Teacher.

149.  As a result of his deprivation of his equal protection right Plaintiff incurred economic loss and suffered emotional distress.

150. Therefore Plaintiff respectfully requests that this court award compensatory and punitive damages, equitable remedies, restitution, and all other necessary, just, and appropriate relief to redress the injuries incurred by Plaintiff as a result of the Defendants' violation.

**COUNT VII-VIOLATION OF THE
CIVIL RIGHTS ACT 42 U.S.C. Section 1983
CONSPIRACY TO DEPRIVE PLAINTIFF OF HIS EQUAL
PROTECTION RIGHT BECAUSE OF HIS AGE IN VIOLATION OF**

## THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

*José Yeyille v. Lisa Robertson, Armandina Acosta-Leon, and Asuncion Valdes in their individual capacities, and in their official capacities*

151.  Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

152.  42 U.S.C. Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress…

153.  Section 1 of the Fourteenth Amendment of the United States Constitution states in pertinent part:  "No state shall…deny to any person within its jurisdiction the equal protection of the laws."

154.  All Defendants are "persons" within the meaning of Section 1983 in that at all times material hereto they were acting under color of state law as a political subdivision of the State of Florida, or a representative thereof.

155.  Defendants Lisa Robertson, Armandina Acosta-Leon, and Asuncion Valdes under color of law conspired to deprive Plaintiff of his equal protection right protected by the Fourteenth Amendment of the United

States Constitution because of his age.

156. Defendants Assistant Principal Armandina Acosta-Leon and Asuncion Valdes expressly communicated and confirmed their agreement to conspire to deprive Plaintiff of his equal protection right through telephone conversations with Egna Rivas; and tacitly, when Assistant Principal Armandina Acosta-Leon visited the former Attendance Office, walked through the former Attendance Office, and walked by the Attendance Office's window to supervise Plaintiff and other foreign-born, forty-plus-year-old, non-native English-speaking, Hispanic Substitute Teachers performing unpaid clerical duties there; when Asuncion Valdes went to the Attendance Office to investigate and confirm Egna Rivas' complaints about foreign-born, forty-plus-year-old, non-native English-speaking Hispanic Substitute Teacher whom Asuncion Valdes had sent to the Attendance Office to perform clerical duties who "has not come to work" ("no ha venido a trabajar"); and Principal Lisa Roberson explicitly confirmed her previous agreement with Assistant Principal Armandina Acosta-Leon and Substitute Teacher Locator Asuncion Valdes to conspire to deprive Plaintiff of his equal protection right by deliberately and conspicuously standing outside the Attendance Office's window on April 25th, 2014 personally to supervise the performance of the

53

clerical duties that they had assigned and required Plaintiff to perform.

157.  In furtherance of their conspiracy Defendants intentionally and maliciously agreed to assign, and require only foreign-born, forty-plus-year-old, non-native English-speaking Hispanic Substitute Teachers, including Plaintiff, to perform unpaid clerical duties in the Attendance Office during Planning Days, Early Release Days, and every moment that they were not substituting a regular Teacher.

158.  As a result of his deprivation of his equal protection right Plaintiff incurred economic loss and suffered emotional distress.

159. Therefore Plaintiff respectfully requests that this court award compensatory and punitive damages, equitable remedies, restitution, and all other necessary, just, and appropriate relief to redress the injuries incurred by Plaintiff as a result of the Defendants' violation.

## COUNT VIII-VIOLATION OF THE
## CIVIL RIGHTS ACT 42 U.S,C. Section 1983
## EQUAL RIGHTS UNDER THE LAW 42 U.S.C Section 1981

160.  Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

161.  42 U.S.C. Section 1983 states in pertinent part:

Every person who, under color of any statute, ordinance,

54

regulation, custom, or usage, of any State… subjects, or causes
to be subjected, any citizen of the United States or other person
within the jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws,
shall be liable to the party injured in an action at law, suit in equity
or other proper proceeding for redress…

162. 42 U.S.C. Section 1981 states in pertinent part:

a)  All persons within the jurisdiction of the United States shall
have the same right in every State…to make and enforce contracts,
to sue, be parties, give evidence, and to the full and equal benefit of
all laws and proceedings for the security of…property as is enjoyed
by white citizens…
b) "Make and enforce contracts" defined. For purposes of this
section, the term "make and enforce contracts" includes the making,
performance, modification, and termination of contracts, and the
enjoyment of all benefits, privileges, terms, and conditions of the
contractual relationship.

163. All Defendants are "persons" within the meaning of Section 1983 in

that at all times material hereto they were acting under color of state law as a

political subdivision of the State of Florida, or a representative thereof.

164. Plaintiff, a classroom teacher, F.S. 1012.01(2)(a) employed pursuant

to F.S.1012.39 (1)(a), and afforded "the same rights and protection of the

laws as certified teachers" under 1012.39(2) contracted with Defendants

"to serve as a substitute teacher who is assigned to instruct and supervise

students in attendance whenever the absent teacher is absent from the work

location for less than ten (10) consecutive work days, excluding weekends,

holidays and teacher workdays" The School Board of Miami-Dade Rule

6Gx13-4-1.07 IA, and "observe the same hours and perform the same duties

as regular teachers" The School Board of Miami Dade County Rule 3120.04,

for each day that Plaintiff worked at John A. Ferguson Senior High School.

165. Defendants' policy of assigning and requiring only foreign-born,

forty-plus-year-old, non-native English-speaking Hispanic Substitute

Teachers to perform clerical duties in the Attendance Office during Planning

Days, Early Release Days, and every time they were not substituting a

Teacher intentionally, maliciously, and unconscionably modified the terms

and conditions of employment depriving Plaintiff of the enjoyment of all

benefits, privileges, terms, and conditions of the contractual relationship

determined and defined by The School Board of Miami Dade County Rules

and Florida statutes because of his national origin.

166. Defendants' conduct in assigning and requiring Plaintiff to perform

clerical duties was intentional, malicious, extreme, and outrageous.

167. As a result of his deprivation of his equal protection right Plaintiff

incurred economic loss and suffered emotional distress.

168. Therefore Plaintiff respectfully requests that this court award

Plaintiff legal or equitable remedies, compensatory and punitive damages,

monetary restitution for clerical duties performed by Plaintiff, and all other

necessary, just, and appropriate relief to redress the discrimination suffered

by Plaintiff as a result of Defendants' violation.

## COUNT IX-VIOLATION OF THE CIVIL RIGHTS ACT 42 U.S.C. Section 1985(3) CONSPIRACY TO DEPRIVE PLAINTIFF OF HIS EQUAL PROTECTION RIGHT BECAUSE OF HIS NATIONAL ORIGIN IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

*José Yeyille v. Armandina Acosta-Leon, Asuncion Valdes, and Egna Rivas in their individual capacities*

169.  Plaintiff repeats and re-alleges each and every allegation set forth

above as if fully set forth herein.

170.  42 U.S.C Section 1985(3) states in pertinent part:

> If two or more persons in any State…conspire…for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws…in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property… the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against one or more of the conspirators.

171.  Section 1 of the Fourteenth Amendment of the United States

Constitution states in pertinent part: "No state shall…deny to any person

within its jurisdiction the equal protection of the laws."

172. Defendants Armandina Acosta-Leon, Asuncion Valdes, and Egna Rivas conspired to deprive Plaintiff of his equal protection right protected by the Fourteenth Amendment of the United States Constitution because of his national origin.

173. Defendants expressly communicated and confirmed their agreement to conspire to deprive Plaintiff of his equal protection right through telephone conversations; and tacitly, when Assistant Principal Armandina Acosta-Leon visited the former Attendance Office, walked through the former Attendance Office, and walked by the Attendance Office's windows to supervise Plaintiff and other foreign-born, forty-plus-year-old, non-native English-speaking, Hispanic  Substitute Teachers performing unpaid clerical duties there; and when Asuncion Valdes went to the Attendance Office to investigate and confirm Egna Rivas' complaints about foreign-born, forty-plus-year-old, non-native English-speaking Hispanic Substitute Teacher whom Asuncion Valdes had sent to the Attendance Office to perform clerical duties who "has not come to work" ("no ha venido a trabajar").

174. In furtherance of their conspiracy Defendants intentionally and maliciously agreed to assign, and require only foreign-born, forty-plus-

year-old, non-native English-speaking Hispanic Substitute Teachers,

including Plaintiff, to perform unpaid clerical duties in the Attendance

Office during Planning Days, Early Release Days, and every moment that

they were not substituting a regular Teacher.

175.  As a result of his deprivation of his equal protection right Plaintiff

incurred economic loss and suffered emotional distress.

176. Therefore Plaintiff respectfully requests that this court award

compensatory and punitive damages, equitable remedies, restitution, and all

other necessary, just, and appropriate relief to redress the injuries incurred by

Plaintiff as a result of the Defendants' violation.

## COUNT X-VIOLATION OF THE
## CIVIL RIGHTS ACT 42 U.S.C. Section 1985(3)
## CONSPIRACY TO DEPRIVE PLAINTIFF OF HIS EQUAL
## PROTECTION RIGHT BECAUSE OF HIS AGE IN VIOLATION OF
## THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH
## AMENDMENT OF THE UNITED STATES CONSTITUTION

*José Yeyille v. Armandina Acosta-Leon, Asuncion Valdes, and Egna Rivas in
their individual capacities*

177.  Plaintiff repeats and re-alleges each and every allegation set forth

above as if fully set forth herein.

178.  42 U.S.C Section 1985(3) states in pertinent part:

    If two or more persons in any State…conspire…for the purpose

59

of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws…in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property… the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against one or more of the conspirators.

179.  Section 1 of the Fourteenth Amendment of the United States Constitution states in pertinent part:  "No state shall…deny to any person within its jurisdiction the equal protection of the laws."

180.  Defendants Armandina Acosta-Leon, Asuncion Valdes, and Egna Rivas conspired to deprive Plaintiff of his equal protection right protected by the Fourteenth Amendment of the United States Constitution because of his age.

181. Defendants expressly communicated and confirmed their agreement to conspire to deprive Plaintiff of his equal protection right through telephone conversations; and tacitly, when Assistant Principal Armandina Acosta-Leon visited the former Attendance Office, walked through the former Attendance Office, and walked by the Attendance Office's windows to supervise Plaintiff and other foreign-born, forty-plus-year-old, non-native English-speaking, Hispanic  Substitute Teachers performing unpaid clerical duties there; and

60

when Asuncion Valdes went to the Attendance Office to investigate and

confirm Egna Rivas' complaints about foreign-born, forty-plus-year-old, non-

native English-speaking Hispanic Substitute Teacher whom Asuncion Valdes

had sent to the Attendance Office to perform clerical duties who "has not

"come to work" ("no ha venido a trabajar").

182.  In furtherance of their conspiracy Defendants intentionally and

maliciously agreed to assign, and require only foreign-born, forty-plus-

year-old, non-native English-speaking Hispanic Substitute Teachers,

including Plaintiff, to perform unpaid clerical duties in the Attendance

Office during Planning Days, Early Release Days, and every moment that

they were not substituting a regular Teacher.

183.  As a result of his deprivation of his equal protection right Plaintiff

incurred economic loss and suffered emotional distress.

184. Therefore Plaintiff respectfully requests that this court award

compensatory and punitive damages, equitable remedies, restitution, and all

other necessary, just, and appropriate relief to redress the injuries incurred by

Plaintiff as a result of the Defendants' violation.

## COUNT XI-VIOLATION OF THE
## CIVIL RIGHTS ACT 42 U.S.C. Section 1985(3)
## CONSPIRACY TO DEPRIVE PLAINTIFF OF HIS EQUAL
## PROTECTION RIGHT BECAUSE OF HIS NATIONAL ORIGIN IN
## VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE
## FOURTEENTH AMENDMENT OF THE UNITED STATES
## CONSTITUTION

*José Yeyille v. Lisa Robertson, Armandina Acosta-Leon, and Asuncion Valdes in their individual capacities*

185.   Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

186.  42 U.S.C Section 1985(3) states in pertinent part:

> If two or more persons in any State…conspire…for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws…in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property… the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, one or more of the conspirators.

187.  Section 1 of the Fourteenth Amendment of the United States Constitution states in pertinent part:  "No state shall…deny to any person within its jurisdiction the equal protection of the laws."

188.  Defendants Lisa Robertson, Armandina Acosta-Leon, and Asuncion Valdes conspired to deprive Plaintiff of his equal protection right protected by

the Fourteenth Amendment of the United States Constitution because of his

national origin.

189. Defendants Assistant Principal Armandina Acosta-Leon and Asuncion

Valdes expressly communicated and confirmed their agreement to conspire to

deprive Plaintiff of his equal protection right through telephone conversations

with Egna Rivas; and tacitly, when Assistant Principal Armandina Acosta-

Leon visited the former Attendance Office, walked through the former

Attendance Office, and walked by the Attendance Office's window to

supervise Plaintiff and other foreign-born, forty-plus-year-old, non-native

English-speaking, Hispanic Substitute Teachers performing unpaid clerical

duties there; when Asuncion Valdes went to the Attendance Office to

investigate and confirm Egna Rivas' complaints about foreign-born, forty-

plus-year-old, non-native English-speaking Hispanic Substitute Teacher

whom Asuncion Valdes had sent to the Attendance Office to perform clerical

duties who "has not come to work" ("no ha venido a trabajar"); and Principal

Lisa Roberson explicitly confirmed her previous agreement with Assistant

Principal Armandina Acosta-Leon and Substitute Teacher Locator Asuncion

Valdes to conspire to deprive Plaintiff of his equal protection right by

deliberately and conspicuously standing outside the Attendance Office's

window on April 25th, 2014 personally to supervise the performance of the clerical duties that they had assigned and required Plaintiff to perform.

190.  In furtherance of their conspiracy Defendants intentionally and maliciously agreed to assign, and require only foreign-born, forty-plus-year-old, non-native English-speaking Hispanic Substitute Teachers, including Plaintiff, to perform unpaid clerical duties in the Attendance Office during Planning Days, Early Release Days, and every moment that they were not substituting a regular Teacher.

191.  As a result of his deprivation of his equal protection right Plaintiff incurred economic loss and suffered emotional distress.

192. Therefore Plaintiff respectfully requests that this court award compensatory and punitive damages, equitable remedies, restitution, and all other necessary, just, and appropriate relief to redress the injuries incurred by Plaintiff as a result of the Defendants' violation.

## COUNT XII-VIOLATION OF THE
## CIVIL RIGHTS ACT 42 U.S.C. Section 1985(3)
## CONSPIRACY TO DEPRIVE PLAINTIFF OF HIS EQUAL
## PROTECTION RIGHT BECAUSE OF HIS AGE IN VIOLATION OF
## THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH
## AMENDMENT OF THE UNITED STATES CONSTITUTION

*José Yeyille v. Lisa Robertson, Armandina Acosta-Leon, and Asuncion Valdes*
*in their individual capacities*

64

193.   Plaintiff repeats and re-alleges each and every allegation set forth

above as if fully set forth herein.

194.  42 U.S.C Section 1985(3) states in pertinent part:

> If two or more persons in any State...conspire...for the purpose
> of depriving, either directly or indirectly, any person or class of
> persons of the equal protection of the laws, or of equal privileges
> and immunities under the laws...in any case of conspiracy set
> forth in this section, if one or more persons engaged therein do,
> or cause to be done, any act in furtherance of the object of such
> conspiracy, whereby another is injured in his person or property...
> the party so injured or deprived may have an action for the recovery
> of damages occasioned by such injury or deprivation, against one or
> more of the conspirators.

195.  Section 1 of the Fourteenth Amendment of the United States

Constitution states in pertinent part:  "No state shall...deny to any person

within its jurisdiction the equal protection of the laws."

196.  Defendants Lisa Robertson, Armandina Acosta-Leon, and Asuncion

Valdes conspired to deprive Plaintiff of his equal protection right protected by

the Fourteenth Amendment of the United States Constitution because of his

age.

197. Defendants Assistant Principal Armandina Acosta-Leon and Asuncion

Valdes expressly communicated and confirmed their agreement to conspire to

deprive Plaintiff of his equal protection right through telephone conversations

with Egna Rivas; and tacitly, when Assistant Principal Armandina Acosta-

65

Leon visited the former Attendance Office, walked through the former Attendance Office, and walked by the Attendance Office's window to supervise Plaintiff and other foreign-born, forty-plus-year-old, non-native English-speaking, Hispanic Substitute Teachers performing unpaid clerical duties there; when Asuncion Valdes went to the Attendance Office to investigate and confirm Egna Rivas' complaints about foreign-born, forty-plus-year-old, non-native English-speaking Hispanic Substitute Teacher whom Asuncion Valdes had sent to the Attendance Office to perform clerical duties who "has not come to work" ("no ha venido a trabajar"); and Principal Lisa Roberson explicitly confirmed her previous agreement with Assistant Principal Armandina Acosta-Leon and Substitute Teacher Locator Asuncion Valdes to conspire to deprive Plaintiff of his equal protection right by deliberately and conspicuously standing outside the Attendance Office's window on April 25th, 2014 personally to supervise the performance of the clerical duties that they had assigned and required Plaintiff to perform.

198.  In furtherance of their conspiracy Defendants intentionally and maliciously agreed to assign, and require only foreign-born, forty-plus-year-old, non-native English-speaking Hispanic Substitute Teachers, including Plaintiff, to perform unpaid clerical duties in the Attendance

66

Office during Planning Days, Early Release Days, and every moment that they were not substituting a regular Teacher.

199.  As a result of his deprivation of his equal protection right Plaintiff incurred economic loss and suffered emotional distress.

200. Therefore Plaintiff respectfully requests that this court award compensatory and punitive damages, equitable remedies, restitution, and all other necessary, just, and appropriate relief to redress the injuries incurred by Plaintiff as a result of the Defendants' violation.

**COUNT XIII VIOLATION OF**
**SECTION 601 of TITLE VI OF THE CIVIL RIGHTS ACT OF 1964**
**(42 U.S.C. 2000d)**

201.  Plaintiff repeats and re-alleges each and every preceding allegation as if fully set forth herein.

202.  Section 601 states in pertinent part that "No person in the United States shall, on the ground of…national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

203.  Section 2000d-4(2)(b) defines "Programs or activity" in pertinent part as "a local educational agency…or other school system…(4)…any part of which is extended Federal financial assistance."

204. Section 2000d-7 states that

(1) A state shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of…Title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], or the provisions of any other federal statute prohibiting discrimination by recipients of Federal financial assistance."

(2) In a suit against a State for a violation of a statute referred in paragraph 1, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State.

205. Defendants intentionally and maliciously discriminated against Plaintiff by assigning to Plaintiff and requiring him to perform unpaid clerical duties in the Attendance Office during Planning Periods, Early Release Days, and every moment that Plaintiff was not substituting a regular Teacher unrelated to his instructional duties because of his national origin.

206. Defendants' conduct in assigning and requiring Plaintiff to perform clerical duties was intentional, malicious, extreme, and outrageous.

207. As a result of the discrimination inflicted upon Plaintiff by his employer, he was not paid for his clerical work unrelated to his instructional duty and suffered emotional distress.

208. Therefore Plaintiff respectfully requests that this court award

compensatory damages, punitive damages, equitable remedies, restitution,

and all other necessary, just, and appropriate relief to redress the injuries

incurred by Plaintiff as a result of the Defendants' violation.

### COUNT XIV VIOLATION OF
### SECTION 601 of TITLE VI OF THE CIVIL RIGHTS ACT OF 1964
### 42 U.S.C. 2000d and 34 C.F.R Section 100.7(e)

209.  Plaintiff repeats and re-alleges each and every preceding allegation as

If fully set forth herein.

210.  Section 601 states in pertinent part that "No person in the United

States shall, on the ground of…national origin, be…subjected to discrimination

under any program or activity receiving Federal financial assistance."

211.  Section 2000d-4(2)(b) defines "Programs or activity" in pertinent part

as "a local educational agency…or other school system…(4)…any part of

which is extended Federal financial assistance."

212. Title 34 Code of Federal Regulations Section 100.7(e) states in

pertinent part:

> No recipient or other person shall intimidate, threaten, coerce,
> or discriminate against any individual for the purpose of
> interfering with any right or privilege secured by Section 601
> of the Act or this part, or because he has made a complaint,
> testified, assisted, or participated in any manner in an
> investigation, proceeding or hearing under this part.

213. Defendants intentionally and maliciously retaliated against Plaintiff because of his national origin

214. Defendants retaliated against Plaintiff after he complained to Principal Lisa Robertson about John A. Ferguson's policy of requiring that a "determinate group of Temporary Instructors," including himself, perform clerical duties and diverse office tasks in the Attendance Office during Planning Periods and Early Release Days; thereupon she instructed Asuncion Valdes within minutes of receiving Plaintiff's letter to tell Plaintiff that if Plaintiff did not like performing clerical duties in the Attendance Office that Plaintiff should "start looking for other schools."

215. Lisa Robertson and Armandina Acosta-Leon personally, and through employees under their supervision, and others, harassed Plaintiff by subjecting Plaintiff to offensive surveillance and scrutiny before, and after, February 18th, 2014 because he had voiced his opinion in the Attendance Office to other foreign-born, forty-plus-year-old, non-native-English-speaking Hispanic Substitute Teachers that Substitute Teachers were instructional personnel and thus should not be assigned and required to perform the clerical duties that John A. Ferguson Senior High School was assigning and requiring them to perform under their terms of employment.

70

216.  Defendants intentionally created a hostile work environment for Plaintiff beginning on February 18th, 2014.

217.  Attendance Secretary Egna Rivas unprecedentedly and maliciously asked Plaintiff, in a loud tone of voice, about his wife; whether they had children; and assured Plaintiff "that it was difficult to raise children nowadays," in the presence of Assistant Principal Armandina Acosta-Leon, her supervisor, the same day about six hours after receiving Principal Lisa Robertson's message through Substitute Locator Asuncion Valdes:  "If you don't like it [performing clerical duties and diverse office tasks in the Attendance Office] you should start looking for other schools."

218.  Defendants maliciously retaliated against Plaintiff locking him out of a classroom along with the students under Plaintiff's supervision during twenty-three minutes two days after he delivered his letter of complaint to Principal Lisa Robertson; and during sixteen minutes four days afterwards in another classroom.

219.  On April 25th, 2014 Principal Lisa Robertson and employees under her supervision harassed, intimidated, and coerced Plaintiff to perform unpaid clerical duties unrelated to his clerical duties through conspicuous surveillance after he sent a complaint to the Equal Employment Opportunity Commission.

71

220.  After Plaintiff sent a complaint to the Office of the Inspector General of the Florida Department of Education, Egna Rivas asked Plaintiff in the Attendance Office whether he chose to go to school on foot by necessity or by choice and whether he knew how to drive a car; and Adela Medero questioned Plaintiff about his intellectual ability to staple two papers together.

221. Defendants' conduct in assigning and requiring Plaintiff to perform clerical duties was intentional, malicious, extreme, and outrageous.

222. As a result of the discrimination inflicted upon Plaintiff by his employer he was not paid for his clerical work unrelated to his instructional duty and suffered emotional distress.

223.  Therefore Plaintiff respectfully requests that this court award compensatory and punitive damages, equitable remedies, restitution, and all other necessary, just, and appropriate relief to redress the injuries incurred by Plaintiff as a result of the Defendants' violation.

## COUNT XV VIOLATION OF
## THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967
## (29 U.S.C. Section 623)

*José Yeyille v. Miami-Dade County Public Schools, and Lisa Robertson, Armandina Acosta-Leon, Asuncion Valdes, and Egna Rivas in their official capacities*

72

224.  Plaintiff repeats and re-alleges each and every allegation set forth

above as if fully set forth herein.

225.  Section 623(2) states in pertinent part:

> It shall be unlawful for an employer to limit, segregate, or
> classify his employees in any way which would deprive or
> tend to deprive any individual of employment opportunities
> or otherwise adversely affect his status as an employee,
> because of such individual's age.

226.  Section 626(c)(1) states in pertinent part:

> Any person aggrieved may bring a civil action in any court of
> competent jurisdiction for such legal or equitable relief as will
> effectuate the purposes of this chapter..."
> (2)(A) person shall be entitled to a trial by jury of any issue of
> fact in any such action for recovery of amounts owing as a
> result of a violation of this chapter, regardless of whether
> equitable relief is sought by any party in such action."

227.  Defendants intentionally and maliciously assigned and required

foreign-born, forty-plus-year-old,non-native-English-speaking Hispanic

Substitute Teachers, including Plaintiff, to perform clerical duties in the

Attendance Office unrelated to their instructional duties during Planning

Periods, Early Release Days, and every moment that they were not

substituting a regular Teacher.

228.  Defendants intentionally and maliciously discriminated against

Plaintiff assigning to him, and requiring him to perform clerical duties

73

unrelated to his instructional duties during Planning Periods, Early

Release Days, and every moment that Plaintiff was not substituting a

regular Teacher because of his age.

229. As a result of the discrimination inflicted upon Plaintiff by his

employer he was not paid for his clerical work unrelated to his instructional

duty and suffered emotional distress.

230.  Therefore Plaintiff respectfully requests that this court award

Plaintiff compensatory damages, equitable remedies, monetary restitution,

and other necessary, just and appropriate relief to redress the injuries

incurred by Plaintiff as a result of the Defendants' violation.

## COUNT XVI VIOLATION OF
## SECTION 703 of TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. Section 2000e-2

231.  Plaintiff repeats and re-alleges each and every allegation set forth

above as if fully set forth herein.

232.  Section 703(a) states in pertinent part that:

> It shall be an unlawful employment practice for an employer—
> (1)[T]o discriminate against any individual with respect to his
> compensation, terms, conditions, or privileges of employment
> because of such individual's…national origin; or
> (2)to limit, segregate, or classify his employees…in any way
> which would deprive or tend to deprive any individual of
> employment opportunities or otherwise adversely affect his

status as an employee, because of such individual's…
national origin.

233.  Defendants intentionally and maliciously assigned and required only foreign-born, forty-plus-year-old, non-native-English-speaking Hispanic Substitute Teachers, including Plaintiff, to perform unpaid clerical duties in The Attendance Office unrelated to their instructional duties during Planning Periods, Early Release Days, and every moment that they were not substituting a regular Teacher.

234.  Defendants intentionally and maliciously discriminated against Plaintiff assigning to him, and requiring him to perform clerical duties unrelated to his instructional duties during Planning Periods, Early Release Days, and every moment that he was not substituting a Teacher because of his national origin.

235. As a result of the discrimination inflicted upon Plaintiff by his employer he was not paid for his clerical work unrelated to his instructional duty and suffered emotional distress.

236. Therefore Plaintiff respectfully requests that this court award Plaintiff compensatory damages, equitable remedies, monetary restitution, and other necessary, just and appropriate relief to redress the injuries incurred by Plaintiff as a result of the Defendants' violation.

## COUNT XVII VIOLATION OF
## SECTION 704 of TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. Section 2000e-3

237.  Plaintiff repeats and re-alleges each and every allegation set forth

above as if fully set forth herein.

238.  Section 704(a) states in pertinent part:

> It shall be an unlawful employment practice for an employer to
> discriminate against any of his employees…for a labor organization
> to discriminate against any member thereof…because he has opposed,
> any practice made an unlawful employment practice by this title, or
> because he has made a charge, testified, assisted, or participated in
> any manner in an investigation, proceeding, or hearing under this
> title.

239.  Defendants intentionally and maliciously retaliated against Plaintiff

because of his national origin.

240.  Defendants retaliated against Plaintiff after he complained to

Principal Lisa Robertson about John A. Ferguson's policy of requiring that

a "determinate group of Temporary Instructors," including himself, perform

clerical duties and diverse office tasks in the Attendance Office during

Planning Periods and Early Release Days; thereupon she instructed Asuncion

Valdes within minutes of receiving my letter to tell me that if I did not like

performing clerical duties in the Attendance Office that I should "start

looking for other schools."

76

241. Lisa Robertson and Armandina Acosta-Leon personally, and through employees under their supervision, and others, harassed Plaintiff by subjecting Plaintiff to offensive surveillance and scrutiny before, and after, February 18th, 2014 because he had voiced his opinion in the Attendance Office to other foreign-born, forty-plus-year-old, non-native-English-speaking Hispanic Substitute Teachers that Substitute Teachers were instructional personnel and thus should not be assigned and required to perform the clerical duties that John A. Ferguson Senior High School was assigning and requiring them to perform under their terms of employment.

242. Defendants intentionally created a hostile work environment for Plaintiff beginning on February 18th, 2014.

243. Attendance Secretary Egna Rivas unprecedentedly and maliciously asked me, in a loud tone of voice, about my wife; whether we had children; and assured me "that it was difficult to raise children nowadays," in the presence of Assistant Principal Armandina Acosta-Leon, her supervisor, the same day about six hours after receiving Principal Lisa Robertson's message through Substitute Locator Asuncion Valdes: "If you don't like it [performing clerical duties and diverse office tasks in the Attendance Office] you should start looking for other schools.

77

244.  Defendants maliciously retaliated against Plaintiff locking him out of a classroom along with the students under Plaintiff's supervision during twenty-three minutes two days after he delivered his letter of complaint to Principal Lisa Robertson; and during sixteen minutes four days afterwards in another classroom.

245. On April 25th, 2014 Principal Lisa Robertson and employees under her supervision harassed, intimidated, and coerced Plaintiff to perform unpaid clerical duties unrelated to his clerical duties through conspicuous surveillance after he sent a complaint to the Equal Employment Opportunity Commission.

246.  After Plaintiff sent a complaint to the Office of the Inspector General of the Florida Department of Education, Egna Rivas asked Plaintiff in the Attendance Office whether he chose to go to school on foot by necessity or by choice and whether he knew how to drive a car; and Adela Medero questioned Plaintiff about his intellectual ability to staple two papers together.

247.  Defendants' conduct in assigning and requiring Plaintiff to perform unpaid clerical duties, retaliating, and harassing him was intentional, malicious, extreme, and outrageous.

248.  As a result of his deprivation of his equal protection right Plaintiff

incurred economic loss and suffered emotional distress.

249.  Therefore Plaintiff respectfully requests that this court award

compensatory and equitable remedies, restitution, and all other necessary,

just, and appropriate relief to redress the injuries incurred by Plaintiff as a

result of the Defendants' violation.

## COUNT XVIII
## UNJUST ENRICHMENT
## FLORIDA COMMON LAW

250.  Plaintiff repeats and re-alleges each and every allegation set forth

above as if fully set forth herein.

251.  At all times material hereto, and pursuant to the common law of

Florida, Defendants intentionally and maliciously assigned and required that

Plaintiff perform unpaid clerical duties and diverse office tasks in the

Attendance Office unrelated to his instructional duties defined by The School

Board of Miami Dade County Rules and Florida statutes during Planning

Days, Early Release Days, and every moment that he was not substituting a

regular Teacher.

252.  Plaintiff's performance of those unpaid clerical duties under

terms and conditions of employment imposed and coerced by Defendants

conferred a benefit upon Defendants, namely, free labor that they would

otherwise had to pay to hire additional clerical personnel.

253. The acceptance and retention of that benefit by Defendants makes it inequitable and unconscionable for Defendants to retain the benefit of Plaintiff's labor without paying compensation or restitution to Plaintiff who otherwise cannot have recourse to an adequate remedy at law.

254. Therefore, Plaintiff respectfully requests that this court award equitable remedies, compensation and/or restitution for the clerical work that he has performed in the Attendance Office since 2008.

## COUNT IXX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## FLORIDA COMMON LAW

255.  The conduct of Defendants Lisa Robertson, Armandina Acosta-Leon, Asuncion-Valdes, and Egna Rivas was intentional and malicious regarding their violations of Plaintiff's employment and constitutional rights.

256.  As the direct and proximate result of the action of Defendants' intentionally and maliciously assigning and requiring Plaintiff to perform unpaid clerical duties and diverse office tasks in the Attendance Office unrelated to his instructional duties defined by The School Board of Miami Dade County Rules and Florida statutes during Planning Days, Early Release Days, and every moment that he was not substituting a regular Teacher,

Plaintiff has suffered, and will continue to suffer, severe emotional distress.

257.  As the direct and proximate result of the actions of Defendants' intentional and malicious harassment and retaliation against Plaintiff, Plaintiff has suffered, and will continue to suffer, severe emotional distress.

258.  Therefore Plaintiff respectfully requests that this court award punitive damages to Plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in his favor and against Defendants, Miami-Dade County Public Schools, and Lisa Robertson, Principal of John A. Ferguson Senior High School, Armandina Acosta-Leon, Assistant Principal of John A. Ferguson High School, Asuncion Valdes, Payroll and Substitute locator of John A. Ferguson High School, and Egna Rivas, Attendance Secretary of John A. Ferguson High School in their individual capacities, and in their official capacities, jointly and severally, for compensatory damages, punitive damages, equitable remedies, restitution, and such other further relief as this Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

259.  Plaintiff hereby demand a trial by jury on all issues for which a right to

jury trial exists.

Dated:                                              Respectfully submitted,


                                                    José Yeyille, Esq.
                                                    Florida Bar 885444
                                                    5505 SW 135th Court
          **PRO SE**                                Miami, FL 33175
                                                    Telephone: 786-201-6142
                                                    joseyeyilleesq@yahoo.com

82